UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

In re:                                                                      Case No. 05-89953-DTE

      PERMELL PARKER,

                                                Chapter 7

              Debtor.
-------------------------------------------------------------------------x
ALLAN B. MENDELSOHN, as Chapter 7 Trustee of the
Estate of PERMELL PARKER,

              Plaintiff,

      -against-                                                   Adv. Pro. No. 07-8267-DTE

PARAGON MORTGAGE BANKERS CORP.,
ANTHONY N. FOCARILE, ANAMARIA HURTADO,
and TRACEY GROOMES

              Defendants.
-------------------------------------------------------------------------x

### MEMORANDUM DECISION

*Appearances*:

David A. Blansky
Counsel for the Plaintiff
LaMonica Herbst & Maniscalco LLP
3305 Jerusalem Avenue
Wantagh, N.Y. 11793

Howard R. Birnbach
Counsel for Defendants Paragon Mortgage Bankers Corp.,
Anthony N. Focarile, and Anamaria Hurtado
111 Great Neck Road
Great Neck, N.Y. 11201

Jerry M. Mimms
Counsel for Defendant Tracey Groomes
6 East 4th Street, Suite 5
Patchogue, New York 11772

Hon. Dorothy Eisenberg, United States Bankruptcy Judge

On October 16, 2005 (the "Filing Date"), Permell Parker (the "Debtor") filed a voluntary Chapter 7 petition for relief under the Bankruptcy Code ("Code").  Allan B. Mendelsohn, Esq. was appointed as the Chapter 7 Trustee ("Trustee"), and he commenced the instant adversary proceeding against the Defendants on October 11, 2007.  The Complaint seeks to recover the transfer of the Debtor's interest in surplus money proceeds realized from a foreclosure sale of the Debtor's real property.

The Court has jurisdiction over this action under 28 U.S.C. §§ 157 and 1334, and Bankruptcy Rule 6009 and 7001.  This action is a core proceeding under 28 U.S.C. § 157 (b)(2)(A), (E), (H), and (O).  Under 28 U.S.C. § 1409(a) the Court is the proper venue for this proceeding.

## BACKGROUND

Prior to June 11, 2004 the Debtor was the fee simple owner of the real property located at 71 Midwood Road, West Babylon, NY 11704 (the "Real Property").  The Debtor resided at the Real Property with Defendant Tracey Groomes ("Groomes"), who is the Debtor's wife, and their two children.  At some time prior to 2000, the Debtor became injured and fell behind in his monthly mortgage payments.  Thereafter in 2000 the mortgagee commenced a foreclosure action on the Real Property in Suffolk County, New York.  On February 13, 2002 a judgment of foreclosure was entered against the Debtor for $139,498.85 plus interests and costs.  The State Court then appointed a referee to commence a foreclosure sale.  The sale took place on April 1, 2004, and the successful bid was for $315,000.00.[1]

After the auction the Debtor approached the successful bidders and spoke with them about his desire to retain his home.  The bidders offered to sell Debtor back his home if Debtor was able to get a mortgage on the Real Property.  The Debtor then approached two of his

---

[1] Pursuant to the terms of sale, the winning bidders made a deposit of $32,000.00 to the referee.

2

acquaintances: the president of Defendant Paragon Mortgage Bankers Corp., ("Paragon") and Defendant Anthony N. Focarile ("Focarile"). Paragon is a full service lending institution in New York, and Defendant Focarile is an attorney who handled closings for Paragon's mortgage division.[2] After speaking with the Debtor regarding his dilemma, Paragon's president and Focarile agreed to assist the Debtor.

It was at this point that Defendant Hurtado, the wife of the president of Paragon, entered the picture. Hurtado's husband asked her to assist him in helping the Debtor retain his home, and she agreed. At the trial Hurtado testified that her role was to purchase the Real Property in order to sell it back to the Debtor.

On June 11, 2004 Defendant Focarile, acting as Paragon's legal representative, effectuated the assignment of the bid from the successful bidders to Paragon, which then transferred the bid to Hurtado. By deed dated June 11, 2004 the Referee granted and conveyed to Hurtado all the right, title and interest in and to the Real Property for $315,000.00. Defendant Focarile had a hand in this as well as he notarized the Referee's signature on the deed to Hurtado. The financing for Hurtado's purchase of the Real Property came from a $327,750.00 mortgage issued by Paragon and secured by the Real Property.[3]

After the payment of all liens and claims against the Real Property, the purchase of the Real Property by Hurtado resulted in surplus monies for the Debtor in the amount of $87,013.67 (the "Surplus Monies"). The Surplus Monies were deposited by the Referee into the Suffolk County Treasury. Thereafter Defendant Focarile appeared in the State Court Foreclosure Action, this time on behalf of the Debtor, and he requested, with the Debtor's consent, that the State

---

[2] Prior to this time Focarile had been employed by Paragon, but was no longer working as an employee for the company when approached by the Debtor.

[3] The Down Payment that had been assigned to Paragon was further assigned to Hurtado when she purchased the Real Property.

Court authorize an assignment of the Surplus Monies from the Debtor to Paragon. There were no objections, and the State Court granted the request. The Surplus Monies in the amount of $78,598.06 were then transferred to Paragon (the "Transfer").[4] Neither Defendant Focarile or Defendant Hurtado ever came into possession or benefitted from the Surplus Monies.[5]

The Debtor filed for bankruptcy protection in October 2005, and about one month later, on November 5, 2004, Hurtado entered into a Residential Contract of Sale with the Debtor's wife, Defendant Groomes for the Real Property. The sale price was $345,000.00. On December 16, 2004 Paragon assigned to Groomes the Surplus Monies for her to use as part of the consideration for her purchase of the Real Property. By a deed dated December 16, 2004 Groomes became the fee simple owner of the Real Property, and the Debtor, Groomes, and their children were able to remain in their home.

The Trustee commenced the instant adversary proceeding after determining that the transfer of the Surplus Monies to Defendant Paragon and Defendant Groomes had been a fraudulent conveyance. Prior to the trial that was held on November 17, 2008, the Trustee made a motion for partial summary judgment against Defendant Paragon.[6] After hearing oral arguments on July 10, 2008, the Court granted the Plaintiff's motion against Defendant Paragon, holding that Paragon had received the Surplus Monies as a fraudulent conveyance.[7]

The trial against the remaining defendants was held on November 17, 2008. At the conclusion of the trial, based on all of the evidence presented and the testimony of the Defendants and the Debtor, the Court made a finding that the Debtor's wife had received a

---

[4] No explanation was provided in the papers or at trial why there was a discrepancy in the amount, but it is likely that money was used to pay the Referee's fees and costs.

[5] Paragon later paid the Debtor $8,415.61 by check in apparent consideration for the Surplus Monies.

[6] The Trustee brought twelve causes of action against the Defendants, and sought summary judgment on his second, third, fourth, fifth, and sixth causes of action against Paragon.

[7] The Order was entered on August 1, 2008, and a Judgment was entered in the amount of $78,598.06, the amount of the Surplus Monies, on August 18, 2008.

fraudulent conveyance of the Surplus Monies, and granted judgment against her because she had not provided any consideration for her receipt of the funds.[8]  The only issue remaining before the Court is the liability of Defendants Hurtado and Focarile for their roles in the fraudulent conveyance of the Surplus Monies.

## DISCUSSION

The Trustee's Complaint seeks relief against Defendants Focarile and Hurtado in three ways.  The first is that the Trustee seeks damages against these Defendants for aiding and abetting the fraudulent conveyance of the Surplus Monies to both Paragon and Groomes.  The second is damages for conversion of the Surplus Monies, and the third is an accounting of all transfers of money and property to or for the benefit of the Defendants, from the Debtor, or property of the Debtor.  Based upon a review of relevant case law, the Trustee's requested relief is denied.

The weight of authority holds that New York law does not recognize a cause of action against parties for aiding and abetting a fraudulent conveyance because, like Defendants Focarile and Hurtado, the parties "were neither transferees of the assets nor beneficiaries of the conveyance."  *Roselink Investors, L.L.C. v. Shenkman*, 386 F.Supp. 2d 209, 227 (S.D.N.Y. 2004); *Geren v. Quantum Chemical Corp.*, 832 F. Supp. 728, 736 (S.D.N.Y. 1993), aff'd., 99 F.3d 401 (2d Cir. 1995) (holding that "the action for fraudulent conveyance does not create an independent remedy of money damages against third parties who aided the debtor's transfer at all."); *Buchwald v. Renco Group, Inc.* (*In re Magnesium Corp. of Am.*), 2009 Bankr. LEXIS 54, *107-116 (Bankr. S.D.N.Y. Jan. 16, 2009) (holding that New York law does not provide a cause of action for aiding and abetting a fraudulent conveyance and holding that "there is no federal

---

[8] On December 3, 2008 the Court entered an Order awarding the Trustee a judgment against Groomes in the amount of $78,598.06 plus interest at the statutory rate.

right of action for aiding and abetting fraudulent conveyances under Bankruptcy Code section 548, and that the federal statutory provision reaches only actual recipients of the property in question"); *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.,* 234 B.R. 292, 330 (Bankr. S.D.N.Y. 1999); *Cahen-Vorburger v. Vorburger*, 41 A.D.3d 281, 282, 838 N.Y.S.2d 543 (1st Dep't 2007).

The Court also notes that this analysis does not change when one of the alleged wrongdoers is an attorney who assisted in the fraudulent conveyance. *See Foufas v. Leventhal*, 1995 WL 332020 (S.D.N.Y. June 5, 1999); *Gallant v. Kanterman*, 198 A.D.2d 76, 603, N.Y.S.2d 315 (1st Dep't 1993) (affirming dismissal of claim against defendant-attorneys for their role in masterminding allegedly fraudulent conveyances because the attorneys were neither the transferees nor the beneficiaries of the conveyances).

Many of the state and federal court decisions cite the New York Court of Appeals decision in *F.D.I.C. v. Porco*, 75 N.Y.2d 840, 842, 552 N.E.2d 158, 552 N.Y.S.2d 910, 910 (1990). There, the F.D.I.C. had brought claims against two bank officials for assisting the bank's director in transferring his funds to a Switzerland account in an attempt to frustrate the F.D.I.C.'s prior judgment against the director. *See id.* The F.D.I.C. argued that New York Debtor and Creditor Law § 273-a created a remedy against the bank officials for aiding and abetting the director. *See id.* at 842. The Court of Appeals rejected the plaintiff's argument, and held that New York Debtor and Creditor Law did not "either explicitly or implicitly, create a creditor's remedy for money damages against parties who … were neither transferees of the assets nor beneficiaries of the conveyance." *Id.* at 842. The Court of Appeals declined to create a judicial remedy out of New York's fraudulent conveyance laws against alleged aiders and abettors.

While the facts of that case are not directly on point with the facts of the instant case, the legal analysis is.

The Court agrees with the New York Court of Appeals and the myriad of other federal and state decisions on this issue. Liability cannot be imposed against a defendant for aiding and abetting a fraudulent conveyance as the alleged wrongdoer has not actually benefitted from the fraudulent conveyance. A trustee or creditor's remedy for a fraudulent conveyance is to "rescind the transfer [and require the] transferee to return the transferred property to the transferor." *Geren v. Quantum Chemical Corp.*, 832 F. Supp. 728, 736 (S.D.N.Y. 1993), aff'd., 99 F.3d 401 (2d Cir. 1995). A defendant that is alleged to have aided and abetted such a conveyance never came into possession of the property that the trustee or creditor is seeking to have turned over, and thus cannot be the subject of a cause of action.

The stipulated facts and the testimony at trial reveal that neither Defendant Focarile nor Defendant Hurtado ever came into possession of the Surplus Monies, and were never the transferees or the beneficiaries of the conveyance. The only parties that received the Surplus Monies were Paragon and Groomes. The Court has already entered judgment against both of those Defendants. Thus, under the applicable case law, Hurtado and Focarile cannot be held liable for their roles in the fraudulent conveyance of the Surplus Monies.

As for the Trustee's conversion and accounting causes of action, they are also denied. With respect to the Trustee's conversion claim, "[a]ccording to New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-404 (2d Cir. 2006) (internal citations omitted). One of the necessary elements for an accounting action is that the complaint must show that there was "money or property entrusted to

the defendant [which imposed] upon him the burden of accounting." *State St. Houses, Inc. v. N.Y. State Urban Dev. Corp.* (*In re State St. Assocs., L.P.*), 323 B.R. 544, 561 (Bankr. N.D.N.Y. 2005).  As the record before the Court is clear that Defendants Hurtado and Focarile never came into possession of the Surplus Monies, the Trustee's claims for an accounting and conversion cannot stand.

## CONCLUSION

Based upon the above facts and findings of law, the Court denies the Plaintiff's requested relief against Defendants Hurtado and Focarile.

Dated: Central Islip, New York
      January 27, 2009
                                        *s/ Dorothy Eisenberg*
                                        Judge Dorothy Eisenberg
                                        United States Bankruptcy Judge